## IN THE COURT OF APPEALS OF IOWA

No. 16-0611
Filed August 17, 2016

**IN THE MATTER OF M.C.,**
**Alleged to Be Seriously Mentally Impaired,**

**M.C.,**
          Respondent-Appellant.
_____


          Appeal from the Iowa District Court for Story County, Paul G. Crawford,

District Associate Judge.



          M.C. appeals from a district court order finding M.C. to be seriously

mentally ill. **AFFIRMED.**




          Andrew J. Boettger of Hastings, Gartin & Boettger, LLP, Ames, for

appellant.

          Thomas J. Miller, Attorney General, and Gretchen Kraemer, Assistant

Attorney General, for appellee State.




          Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

M.C. appeals the district court's order finding M.C. to be seriously mentally impaired. We affirm.

### I. Background Facts and Proceedings.

M.C. has a long history of bipolar disorder. In March 2016, she disappeared from a mental health facility, wandered the streets of Ames, and ended up at a homeless shelter. M.C. was taken to the emergency room at Mary Greeley Medical Center (MGMC). She presented in a manic state and it was unknown if she was taking her medications. MGMC personnel filed an application alleging serious mental impairment pursuant to Iowa Code chapter 229 (Supp. 2015), and an order for immediate custody, detaining M.C. at MGMC until a hearing could be held, was entered by the district court.

M.C. was examined by a board-certified psychiatrist. Five days later, a hearing was held at MGMC before a judge. The psychiatrist testified and provided the court with her report of examination, opining that M.C. suffered a serious mental impairment. The court subsequently found there was clear and convincing evidence M.C. was seriously mentally ill. Specifically, the court found:

> **1. Judgmental Capacity:**
> None. Does not believe she is mentally ill. Now refusing to take any medication despite doctor's advice.
> **2. Treatability:**
> Going to take a long time. Had been irregularly keeping appointments to take injectable Invega. Refuses to take lithium and other antipsychotic medication.
> **3. Dangerousness:**
> [M.C.]'s aggressive behavior and noncompliance with medication has resulted in [two medical facilities] refusing to continue to provide outpatient services. [M.C.] was found wandering in Ames. [M.C.] admitted she has reduced her food intake and has lost an estimated thirty pounds since December

2015. Not being medicated for the mental illness results in increasingly dangerous behaviors (overdosing, not eating, hitchhiking).

**4. Mental Illness:**
   Schizoaffective Disorder. Exhibiting at [MGMC] manic stage with flighty and disconnected thinking, delusions, irritable behavior, and aggressive behavior.

By separate order, the court placed M.C. at MGMC for inpatient evaluation and treatment. M.C. appealed.

### II. Standard of Review.

We review sufficiency of the evidence challenges in involuntary commitment appeals for errors at law. *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). "[T]he district court's findings of fact are binding on us if supported by substantial evidence," which means "a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). Clear and convincing evidence "means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *B.B.*, 826 N.W.2d at 428 (citation omitted).

### III. Serious Mental Impairment.

M.C. contends the State failed to prove by clear and convincing evidence that she is seriously mentally impaired. Iowa Code section 229.1(20) provides that a person is "[s]eriously mentally impaired" where the person is mentally ill and "because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment," and is likely, if allowed to remain at liberty, to inflict physical injury on herself or others or to inflict emotional injury on the designated class of persons. *See also B.B.*, 826 N.W.2d at 432 (discussing the same statutory definition then found in section

229.1(17)). "Likely" is construed to mean "probable or reasonably to be expected." *In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980). "[T]he endangerment element requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger." *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986) (internal quotation marks and citation omitted). The danger the person poses to herself or others must be evidenced by a "recent overt act, attempt or threat." *Id.* (citation omitted). "In the context of civil commitment . . . an 'overt act' connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury." *In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988).

M.C. agrees the record establishes she was afflicted with a mental illness and that she lacked sufficient judgment to make responsible decisions with respect to her hospitalization or treatment. It is the dangerousness element that M.C. challenges on appeal. She asserts "the record is void of evidence to conclude that [she] was likely to inflict physical injury on herself or others or to inflict emotional injury upon those she comes into contact with."

In her report to the court, the psychiatrist opined:

> 16. In your judgment, is [M.C.] likely to physically injure . . . herself or others? Yes[.]
> What overt acts have led you to conclude [M.C.] is likely to physically injure . . . herself or others? [M.C.] was recently wandering about Ames. She has many times taken medications inappropriately and overdosed, ending up in the intensive care unit.
> . . . .
> 18. Can [M.C.] be evaluated on an [outpatient] basis? No[.]
> Basis for answer: [M.C.] is currently taking prescribed medications; however, she remains manic with pressured speech, flight of ideas, and extreme[] irritability. Looking at her electronic

medical records, it appears that [M.C.] has been ill since at least early February. Her primary care provider's office staff is . . . fearful of her and is no longer willing to administer the Invega injections. [M.C.] has clearly not improved with outpatient services in the last [six] or more weeks and requires inpatient treatment to stabilize her current manic episode. I recommend [a] continued stay in the hospital at this time.

19. Can [M.C.], without danger to self or others, be released to the custody of a relative or friend during the course of evaluation? No[.]

20. Is full-time hospitalization necessary for evaluation? Yes[.]

The psychiatrist testified M.C. has schizoaffective disorder and "chronically has some underlying delusional ideas." The doctor noted that M.C. has a long history of medication noncompliance in the hospital and that she was presently refusing to take certain medications. Asked if there was any way M.C. could be released to outpatient treatment without being a risk of harm to herself, the doctor opined she did not believe so, explaining:

> [M.C.] has supported community living services. She has medication passes. She refuses to take some of her meds even on med passes. They—[M.C.'s service providers do not] feel like they can provide services for her in a residential setting anymore, and if that is the case, then I don't feel like she could manage on her own because she will not take medications at all.

Noting M.C.'s symptoms were already severe, the doctor stated M.C.'s symptoms would worsen if she were removed from all medications. M.C. made it clear to the doctor that she did not want to be on any medications. She also admitted to the doctor that she had been restricting her food intake and eating only twenty-five percent of her meals. M.C. also talked "about how she was not eating in the outpatient setting" and, from M.C.'s own report, it sounded as if M.C. "had lost about [thirty] pounds since coming back to the area" in December 2015.

Taking all of the above into consideration, we find the evidence sufficient to support the district court's finding that the dangerousness element was sustained by clear and convincing evidence.

## IV. Conclusion.

Because there is sufficient evidence to conclude M.C. is mentally ill, lacks sufficient judgment to make reasonable decisions as to her treatment, and is likely to injure herself without continued involuntary commitment and medical treatment, we agree with the district court that M.C. is seriously mentally impaired as defined by section 229.1(17). Consequently, we affirm the district court's ruling on appeal.

**AFFIRMED.**